McLEAN TRUCKING COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 77-2255.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1979.

Decided July 30, 1980.

Melvin R. Manning, Washington, D. C., (McCaul, Grigsby & Pearsall, Richmond, Va., on brief), for petitioner.

James Callear, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, Elliott Moore, Deputy Assoc. Gen. Counsel, Jay E. Shanklin, Sara McLaurin Green, N. L. R. B., Washington, D. C., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, WIDENER and SPROUSE, Circuit Judges.

BRYAN, Senior Circuit Judge:

Review and vacation of an order [1] of the National Labor Relations Board (Board) is here sought by the McLean Trucking Company (McLean).[2] The order found that McLean had violated the N.L.R.A., 29 U.S.C. §§ 151 *et seq.*, by discharging employee Don Nichols for seeking union representation concerning a five-day suspension, *id.* §§ 158(a)(3) and (1); by interrogating Nichols about approaching the Union, and after his discharge, by threatening to terminate fellow employees unless they dissuaded Nichols from filing charges with the Board, *id.* § 158(a)(1); and by demoting a group of casual employees on the seniority call list because Nichols had filed charges against McLean with the Board, *id.* § 158(a)(4) and (1).

We set aside the order as not supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

---

1. 231 N.L.R.B. No. 108 (1977).

2. A North Carolina interstate trucking corporation, with a terminal at West Middlesex, Pennsylvania.

## I.

Nichols, a student at Westminster College in New Wilmington, Pennsylvania, was a "casual" dock worker for approximately nine months, from September 27, 1975, until June 12, 1976, when McLean terminated his employment. On October 28, 1975, he had become a member of Teamsters Local Union 261 (Union), with whom McLean had a currently existing collective bargaining agreement (agreement).

As a casual, Nichols enjoyed the agreement's wage rate scales but few other union benefits. He was called to work only at the option of his employer and could not command any minimum amount of work. Undisputed throughout this case is the fact the company could discharge a casual without cause at any time.

On Saturday, June 5, 1976, Nichols was suspended along with two other co-workers, Hartwell and Winters, for neglecting to recount orders for shipments before loading them on trucks. He was instructed to call McLean back in a week. Nevertheless, he was allowed to work Sunday, June 6. The day of his suspension, Nichols complained to the Union of the length of the penalty. In response, its Business Agent informed him that since he was only a casual employee, he had no right to file a grievance with the Union based on this suspension—"that there was nothing he could do for him." The Agent said that on June 7 he discussed the disciplinary action taken against Nichols with McLean Terminal Manager, Mise.

Before Nichols called the company as instructed, Superintendent Kerns had reviewed Nichols' record on Wednesday, June 9, and decided to end his employment. When Nichols later telephoned Kerns, Saturday, June 12, to ascertain the duration of the suspension, he was told by the Superintendent of his decision. The Administrative Law Judge credited Nichols' testimony that during the June 12 conversation, Kerns said, "Well, I didn't work on June 6th, but I understand you didn't get your weight back up, and so you've been fired." To no avail Nichols pleaded for his job. Kerns remarked at the end of the discussion, "Oh,

by the way, Don, I heard a nasty rumor that you went to the Union about being laid off for five days." When Nichols admitted doing so, Kerns responded, "Well, that was stupid. Don't you know they can't do anything for you?"—the same earlier rejoinder of the Business Agent to Nichols. While Kerns denied making this statement, we must accept the ALJ's contrary finding.

Thereafter, July 2, Nichols filed an unfair labor practice charge, amended August 4 and 24, which in turn developed into the August 30, 1976 complaint and the March 22, 1977 Board order now before us.

The Board found discrimination as its ground for declaring the cessation of Nichols' job a labor law offense. The anti-union-motivated discrimination the Board found is McLean's discharge of Nichols but not of Hartwell and Winters who had been suspended at the same time, for the same reason and for the same period as was Nichols. But in this effort the Board falters and founders because of Nichols' aggravation of his default in duty. Not only was he admittedly inefficient on June 5 when he was suspended, but on the very next day he continued to perform his work inadequately, despite the fact that he worked on that day through the employer's grace. Even if McLean were required to have cause for Nichols' separation, surely this was cause. More than that, however, it explains the disparate treatment of the three suspended on June 5.

■ In these discrimination cases, the Board has the burden of establishing the discharge as discrimination springing from Union antipathy. This obligation was not fulfilled. In *American Manufacturing Associations, Inc. v. N.L.R.B.*, 594 F.2d 30, 36 (4th Cir. 1979), we defined the burden of proof as follows:

When an employer has, as did the employer in this case, a perfectly valid reason to discharge or discipline an employee, it is not sufficient in order to establish a violation of the Act "for the Board to declare that the * * * [discharges were] * * * 'pretextual,'" but "*the burden which is on the Board is not sim-*

ply to discover some evidence of improper motive, but to find an affirmative and persuasive reason why the employer rejected the good cause and chose a bad one' * * * and to 'present a substantial basis of believable evidence pointing toward the unlawful one.'" (Accent added.)

See *N.L.R.B. v. Appletree Chevrolet, Inc.,* 608 F.2d 988, 993 (4th Cir. 1979).

■ Truth is that both the casuals' character of employment at McLean and the decision to let Nichols go, were the product of the exercise by McLean of a "business judgment." *N.L.R.B. v. Ace Comb Co.,* 342 F.2d 841, 847 (8th Cir. 1965).

It has long been established that for the purpose of determining whether or not a discharge is discriminatory in an action such as this, it is necessary that the true, underlying reason for the discharge be established. That is, the fact that a lawful cause for discharge is available is no defense where the employee is actually discharged because of his Union activities. *A fortiori,* if the discharge is *actually* motivated by a lawful reason, *the fact that the employee is engaged in Union activities at the time will not tie the employer's hands and prevent him from the exercise of his business judgment* to discharge an employee for cause.

*Id.* (Accent added.) Presently the Board's finding of improper motivation is not supported by substantial evidence.

## II.

The Board also found that the company violated N.L.R.A., 29 U.S.C. § 158(a)(1), when Kerns, in the June 12 discussion with Nichols, interrogated him about contacting the Union. This conclusion cannot be upheld. Nothing in that conversation, in our view, may be construed as reasonably tending to coerce. Kerns' statements were a mere inquiry followed by an observation of fact: that the Union could do nothing for Nichols regarding the duration of his suspension. It was an honest corroborating repetition of the claimant's own Union Business Agent's volunteered information

to him. The change in the environs of its repetition and in the person of the repeater is, of course, noted, but the simplicity of the remark is not, because of those circumstances, to be stamped with the gravity of offense attributed to it by the Board.

## III.

The Board alludes to and relies upon other instances as evidence of anti-union motivation which prompted Nichols' discharge. In one incident McLean Superintendent Kerns on June 15, 1976 allegedly threatened the jobs of casual employees unless casual worker, one Dennis Ramm, dissuaded Nichols from presenting his charges to the Board. For another it is said that the Superintendent approached one John Shaffer, also a casual, and urged him to use any means at his disposal to discourage Nichols from pursuing charges against the company before the Board, lest McLean might drop all the casuals. At all events, the inquiry is academic. The casuals lost nothing through the appeals of Kerns. They uninterruptedly retained their hirings with Nichols all the while permissibly discharged.

## IV.

The remaining unfair labor practice found by the Board was that the company, allegedly in violation of 29 U.S.C. § 158(a)(4) and (1), changed its call-in list for casuals, especially Westminster College students, because of Nichols' filing charges with the Board against the company. We also see this conclusion erroneous. Customarily, McLean's order of call-in had preferred relatives of its employees to serve when need demanded it. Later it changed to a system based solely on seniority. On July 17, 1976 the company claimed that its volume of work had lessened and it wanted to use its best workers during the slow period. The call-in system was thereafter to be invoked on merit rather than seniority. Again, it is noteworthy that the casuals had no contractual right to be called in to work at all or in any particular priority. Obviously, these changes have not been established as unfair labor practices.

For the Board's unwarranted extensions of the reach of the Act, we set aside its final judgment.

ORDER VACATED.